**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | |
|---|---|
| AMANDA WEEKS, | : |
| | : |
|     Plaintiff, | : |
| | : |
| v. | :     CASE NO.: 7:23-CV-77 (LAG) |
| | : |
| COLQUITT COUNTY, GEORGIA, | : |
| SHERIFF ROD HOWELL, and DEPUTY | : |
| KYLE JONES, | : |
| | : |
| | : |
|     Defendants. | : |
| _____ | : |

## ORDER

Before the Court are Defendant Deputy Kyle Jones' Motion to Dismiss (Doc. 27) and Defendants Colquitt County's and Sheriff Rod Howell's Motion to Dismiss (Doc. 28). For the reasons below, Defendant Deputy Kyle Jones' Motion (Doc. 27) is **GRANTED in part** and **DENIED in part**. Defendants Colquitt County's and Sheriff Rod Howell's Motion (Doc. 28) is **GRANTED**.

## PROCEDURAL BACKGROUND

On May 31, 2023, Plaintiff Amanda Weeks initiated this action against Defendants Colquitt County, Georgia (Colquitt County), Sheriff Rod Howell (Sheriff Howell), in his official and individual capacities, and Deputy Kyle Jones (Deputy Jones), in his official and individual capacities, in the Superior Court of Colquitt County, Georgia. (Doc. 1-2). Defendants removed this action on June 28, 2023 pursuant to 28 U.S.C. §§ 1441 and 1446. (Doc. 1 at 1). That same day, Defendants Colquitt County and Sheriff Howell filed a Motion to Dismiss Plaintiff's complaint. (Doc. 2). On July 7, 2023, Defendant Deputy Jones also filed a Motion to Dismiss. (Doc. 6). On September 18, 2023, Plaintiff filed a Motion to Amend her complaint. (Doc. 21). A hearing was held on September 19, 2023, at

which the Court granted Plaintiff's Motion to Amend and ordered Plaintiff to file an amended complaint. (Docs. 23, 24, 26).

Plaintiff filed an Amended Complaint on September 25, 2023. (Doc. 25). Therein, Plaintiff raises claims under 42 U.S.C. §1983 for violations of the Fourth and Fourteenth Amendments to the United States Constitution and state law claims of negligence, intentional infliction of emotional distress, assault and battery, invasion of privacy, false imprisonment, sexual harassment, and trespass. (*Id.* ¶¶ 1, 51–66). Plaintiff seeks "compensatory, general, and punitive damages" "not less than $2,000,000[.00]" and "reasonable attorney['s] fees pursuant to 42 U.S.C § 1988[.]" (*Id.* at 23). On October 3, 2023, Defendant Deputy Jones filed a Motion to Dismiss. (Doc. 27). That same day, Defendants Colquitt County and Sheriff Howell filed a Motion to Dismiss. (Doc. 28). The Parties timely responded and replied. (Docs. 29–32). The Motions to Dismiss are now ripe for review. *See* M.D. Ga. L.R. 7.3.1(A).

## FACTUAL BACKGROUND

This suit arises from the alleged sexual harassment of Plaintiff by Defendant Deputy Jones while he was employed by the Colquitt County Sheriff's Office.[1] On June 4, 2021, Plaintiff visited the Sheriff's Office to file a report about an assault. (Doc. 25 ¶ 15). Plaintiff arrived at the Sheriff's Office with her child and notified them that she was parked outside. (*Id.*). Defendant Deputy Jones told Plaintiff that he would come to the parking lot to take her statement. (*Id.*). Defendant Deputy Jones met Plaintiff in the parking lot and advised her that he was an investigator on duty. (*Id.*). Defendant Deputy Jones noticed Plaintiff had bruises on her person and requested Plaintiff follow him inside to make the report. (*Id.*). He directed Plaintiff through a downstairs entrance into the building and took Plaintiff to a separate room. (*Id.*). Plaintiff alleges that Defendant Deputy Jones "ordered her to remove her clothing" because "he needed to take photographs of the bruises on Plaintiff for his

---

[1]    On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts all facts alleged in Plaintiff's Amended Complaint (Doc. 25) as true. *See* Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999) (citation omitted).

investigation" and "he needed the evidence to keep Plaintiff from getting charged . . . because she hit the person who attacked her in self-defense[.]" (*Id.* ¶¶ 15–17). Plaintiff alleges that Defendant Deputy Jones "asked [her] to take off her shirt, pants, shoes and socks." (*Id.* ¶ 16). "While he purported to document her injuries, he inappropriately touched her body and photographed her with his cell phone." (*Id.* ¶ 15). Plaintiff alleges that Defendant Deputy Jones "pretended [to] touch[] her bruises" but "was trying to caress her body including, . . . her thighs[,] . . . lower buttock area[,] . . . her breasts[,] . . . and groin area[.]" (*Id.* ¶ 18).

Plaintiff alleges that Defendant Deputy Jones "detained [her] for several hours[.]" (*Id.*). Plaintiff then told Defendant Deputy Jones "she had to leave . . . to go get her children from baseball practice as an excuse to terminate the meeting." (*Id.* ¶ 19). Defendant Deputy Jones "claimed he needed to get further statements from her . . . and she would have to return." (*Id.*). When Plaintiff returned with her children, Defendant Deputy Jones told her to leave them in her car and sit in his patrol car. (*Id.* ¶ 20). While in his car, Plaintiff alleges Defendant Deputy Jones made "numerous advances and inappropriate comments towards her" including: asking Plaintiff is she "wanted his lips"; "ask[ing] why she was looking at his crotch"; and "ask[ing] if she would ever have sex with him." (*Id.* ¶¶ 20–21). Defendant Deputy Jones "asked if Plaintiff was feeling uncomfortable because complaints had been lodged against him before by women who claimed he had acted inappropriately toward[] them . . . in another jurisdiction[.]" (*Id.* ¶ 22).

After Plaintiff asked to leave, Defendant Deputy Jones told her the investigation was not done and "he wanted to come to her home because there was property damage [there] related to the investigation[.]" (*Id.* ¶ 23). Plaintiff alleges that when Defendant Deputy Jones arrived to her house, he asked her husband to leave. (*Id.* ¶ 24). Thereafter, Defendant Deputy Jones "insisted he wanted to go inside the house" and "repeatedly asked if Plaintiff would have sex with him[.]" (*Id.* ¶ 25). "At one point, Defendant [Deputy] Jones grabbed [Plaintiff's] cell phone . . . and 'added' himself in an application on the phone." (*Id.* ¶ 26). Defendant Deputy Jones eventually left Plaintiff's residence "because she would

not let him inside." (*Id.*). Plaintiff alleges that he sent her a message asking her "when do you want to f___?" (*Id.*).

Plaintiff claims in her Amended Complaint that Defendants violated her "civil rights . . . under the United States Constitution, Georgia law and the United States Code." (*Id.* ¶ 28). The Amended Complaint alleges "[u]pon information and belief, Colquitt County, the Colquitt County Sheriff's Office and its supervisors, including Sheriff Howell, have maintained a system of review of deputy conduct which is so untimely and cursory as to be ineffective and to permit and tolerate the unreasonable sexual harassment by sheriff's deputies." (*Id.* ¶ 29). Defendants Colquitt County and Sheriff Howell "knew or should have known [Defendant] Deputy Jones had previously been accused of inappropriate conduct . . . and their failure to adequately train or supervise him was the driving force behind the violations of Plaintiff's constitutional rights[.]" (*Id.*).

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face if the complaint alleges enough facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). A complaint must plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. *Twombly*, 550 U.S. at 556. The Court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiffs[,]" but the same liberal reading does not apply to legal conclusions. *Anderson v. Wilco Life Ins. Co.*, 17 F.4th 1339, 1344–45 (11th Cir, 2021) (first quoting *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010); and then citing *Iqbal*, 556 U.S. at 678). "[A] plaintiff armed with nothing more than conclusions" cannot "unlock the doors of discovery[.]" *Iqbal*, 556 U.S. at 678–79. Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citation omitted).

A court ordinarily does not consider anything beyond the complaint and documents attached thereto when ruling on a motion to dismiss. There is an exception, however, for extraneous documents that are (1) referred to in the complaint, (2) central to the plaintiff's claims, and (3) of undisputed authenticity. *Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018) (citations omitted). Plaintiff attached two documents to her Responses to Defendants' Motions: the officer profile of Deputy Jones and a Freedom of Information Request. (Doc. 29-1; Doc. 29-2; Doc. 30-1; Doc. 30-2). On December 5, 2023, Plaintiff filed Supplemental Exhibits to her Response which included an incident report for an unrelated event dated October 30, 2023, and the indictment of Deputy Jones dated August 8, 2023. On January 30, 2024, Plaintiff filed a second Supplemental Exhibit which included a final disposition felony sentence with probation for Deputy Jones. (Doc. 35-1). On March 11, 2024, Plaintiff filed a final Supplemental Exhibit which included the final disposition felony sentence with probation document and an additional Georgia Bureau of Investigation Fact Sheet. (Doc. 36-1). None of the exhibits provided by Plaintiff were referred to in Plaintiff's complaint. Accordingly, under the present circumstances, it is not appropriate for the Court to consider the officer profile of Deputy Jones, the Freedom of Information Request, the incident report, the indictment of Deputy Jones, the final disposition felony sentence, or the Georgia Bureau of Investigation Fact Sheet with regard to the Motions to Dismiss.

**DISCUSSION**

I.      **42 U.S.C §1983 Claim against Defendant Deputy Jones and Defendant Sheriff Howell in their Official Capacity**

In Counts I and II, Plaintiff asserts claims for unlawful detention and sexual harassment in violation of the Fourth and Fourteenth Amendments and 43 U.S.C § 1983. (Doc. 25 ¶¶ 32–38). Plaintiff claims that Defendant Deputy Jones violated her Fourth Amendment rights by "by unlawfully detaining, arresting, seizing, touching, and photographing Plaintiff" and "by taking her cell phone and searching it and placing his contact information in her phone." (*Id.* ¶ 35). Plaintiff claims she was deprived of her rights under the Equal Protection Clause of the Fourteenth Amendment "as she was subjected to

violations of her constitutional right to bodily integrity and privacy, sexual harassment, sexual battery, and sexual assault while unlawfully detained and the same was done on account of her gender[.]" (*Id.* ¶ 36). Plaintiff further claims she was deprived of her "Fourteenth Amendment rights to substantive due process" including "her right to bodily integrity [and] right to privacy" when she was "sexually assaulted, sexually battered, and harassed[.]" (*Id.*).

### A. Eleventh Amendment Immunity for Deputy Jones

Defendant Deputy Jones argues that Plaintiff's § 1983 claims against him in his official capacity are barred by the Eleventh Amendment to the United States Constitution because, at all relevant times, Defendant Deputy Jones was acting as an "arm of the state[.]" (Doc. 27-1 at 3). Plaintiff argues that Defendant Deputy Jones does not qualify as a state official subject to immunity, but rather is an "county official" whose "law enforcement and investigatory duties . . . do not derive from state law." (Doc. 30 at 3–4).

The Eleventh Amendment prohibits suits against a state by its own "private citizen[s]" in federal court. *Nat'l Ass'n of the Deaf v. Florida*, 980 F.3d 763, 770 (11th Cir. 2020) (citing *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Although Congress can abrogate sovereign immunity, "Congress has not abrogated eleventh amendment immunity in section 1983 cases." *Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979)). Moreover, Georgia has not waived its sovereign immunity under the Eleventh Amendment. *See* O.C.G.A. § 50-21-23(b); *Clarke v. McMurry*, 763 F. App'x 899, 900 (11th Cir. 2019) (per curiam). "A suit against a state official in his official capacity constitutes a suit against the State itself." *McWilliams v. Escambia Charter Sch.*, 144 F. App'x 840, 843 (11th Cir. 2005) (per curiam) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). "A defendant need not be labeled a 'state officer' or 'state official' to receive Eleventh Amendment immunity, but instead need only be acting as an 'arm of the State,' which includes the state's agents and instrumentalities." *Gibbons v. McBride*, 124 F. Supp. 3d 1342, 1359 (S.D. Ga. 2015) (citing *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003)).

Plaintiff argues that Defendant Deputy Jones was not performing "state mandated duties" when he allegedly sexually harassed her because "[t]he law enforcement and investigatory duties of the sheriff and sheriff's office do not derive from state law." (Doc. 30 at 4 (citing O.C.G.A § 15-16-10 which "prescribes duties of sheriffs only as to jails, courtroom security, and other functions"). In *Grech v. Clayton County*, the Eleventh Circuit unequivocally stated that a "sheriff acts on behalf of the State in his function as a law enforcement officer and keeper of the peace in general[.]" 335 F.3d 1326, 1347 (11th Cir. 2003) (en banc); *see also Townsend v. Coffee County*, 854 F. Supp. 2d 1345, 1352 (S.D. Ga. 2011) (finding that a deputy sheriff "was acting as an 'arm of the state'" while making an investigatory stop and arrest; *Stanton v. McIntosh County*, No. CV 209-092, 2010 WL 11526845, at *4 (S.D. Ga. Sept. 29, 2010) (finding that a sheriff was acting as an arm of the state when "applying for and obtaining arrest warrants"), *aff'd* 434 F. App'x 871 (11th Cir. 2011); *McDaniel v. Yearwood*, 2012 WL 526078, at *7 (N.D. Ga. Feb. 16, 2012) (concluding that "the deputies were acting as state actors when they arrested Plaintiff"). The *Grech* court specifically noted that "under Georgia law, counties lack authority and control over sheriffs' law enforcement functions." *Grech*, 335 F.3d at 1332.

Defendant Deputy Jones was acting in his official capacity during the events that form the basis of Plaintiff's § 1983 claim. Investigating a crime, taking statements from the victim, assessing injuries, and assessing the scene of a crime constitute general law enforcement functions. Accordingly, Defendant Deputy Jones is immune from suit in his official capacity under the Eleventh Amendment.

**B. Eleventh Amendment Immunity for Sheriff Howell**

In Count III, Plaintiff asserts a § 1983 claim against Defendant Sheriff Howell, alleging that he "inadequately vetted deputies . . . , inadequately supervised them, improperly retained such deputies . . . , [and] inadequately trained deputies . . . "; "knew or should have known that [Defendant Deputy Jones] had a history of sexual harassment and . . . consciously disregarded the risk he posed . . . "; "had a persistent and widespread practice of authorizing certain deputies . . .  to work in law enforcement despite . . . previously [being] engaged in sexual harassment in the scope of their employment[]"; and

"ha[s] a persistent and widespread practice of allowing [] deputies to violate . . . policies and procedures[.]" (Doc. 25 ¶¶ 40–42). Defendant Sheriff Howell argues that "[a]t all times relevant to Plaintiff's claims. . . [he] acted as an arm of the state and not the county" and "therefore, . . . is not a person subject to liability under § 1983." (Doc. 28-1 at 3) (emphasis omitted). Plaintiff argues that Defendant Sheriff Howell is not entitled to Eleventh Amendment Immunity because "[t]he Georgia Constitution designates sheriffs as 'county officers[]'" and "Georgia courts treat claims against sheriffs in their official capacity as claims against the county." (Doc. 29 at 4) (first citing Ga. Const. art. IX, § 1, para. 3; and then citing *Gilbert v. Richardson*, 452 S.E.2d 476, 478 n.4 (Ga. 1994)).

The Eleventh Circuit has held that sheriffs act as arms of the state when they make personnel decisions, such as hiring deputies. *See, e.g., Pellitteri v. Prine*, 776 F.3d 777, 780 (11th Cir. 2015) (sheriff acted as an arm of the state when making employment decisions such as hiring and firing); *Herring v. City of Thomasville*, No. 7:19-CV-101 (HL), 2020 WL 4194993, at *8 (M.D. Ga. July 21, 2020) (same); *Gray v. Royal*, 181 F. Supp. 3d 1238, 1247 (S.D. Ga. 2016) (same); *Moon v. Rockdale County*, 188 F. Supp. 3d 1369, 1379 (N.D. Ga. 2016) (same). "[S]heriffs alone [have] the power to hire their deputies, independent of any influence from county governments." *Pellitteri*, 776 F. 3d at 780; *see* O.C.G.A. § 15-16-23 ("Appointment of deputy"). The Eleventh Circuit also has found that a sheriff acts as an arm of the state under Georgia law when training deputies because the Georgia legislature controls the qualifications and training of sheriffs and "[i]t is reasonable to assume that such training includes instruction . . . [on] hiring and training deputies." *Manders*, 338 F.3d at 1319–20; *see also Grech*, 335 F.3d at 1347 (finding that the defendant county "does not, and cannot, direct the Sheriff . . . [on] how to hire, train, supervise, or discipline his deputies"). Here, Plaintiff's allegations against Defendant Sherriff Howell all relate to how he hired, trained, and supervised his deputies. Accordingly, Defendant Sheriff Howell was acting as an arm of the state and is immune from suit under the Eleventh Amendment.

## II.    Qualified Immunity for Deputy Jones

Defendant Deputy Jones argues that Plaintiff's § 1983 claims against him in his individual capacity are barred by Qualified Immunity because he was acting within his "discretionary authority" and his actions did not "rise[] to the level of a violation of a constitutional right[.]" (Doc. 27 at 5–10).

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). First, the Court must determine whether an official was "acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (citation omitted). "Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply." *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009) (citation omitted). "To deny qualified immunity at the motion to dismiss stage, [the Court] must conclude both that the allegations in the complaint, accepted as true, establish a constitutional violation and that the constitutional violation was 'clearly established.'" *Sebastian v. Ortiz*, 918 F.3d 1301, 1307 (11th Cir. 2019) (citation omitted); *see also Williams v. Santana*, 340 F. App'x 614, 616–17 (11th Cir. 2009) (citation omitted). Thus, "if the plaintiff fails to allege the violation of a clearly established constitutional right[,]" then "[t]he question of qualified immunity should be resolved in the defendant's favor[.]" *Williams v. Ala. State Univ.*, 102 F.3d 1179, 1182 (11th Cir. 1997).

### A.    Discretionary Authority

A government employee acts in his discretionary authority when "(a) performing a legitimate job-related function . . . (b) through means that were within his power to utilize." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004); *see also Hinson v. Bias*, 927 F.3d 1103, 1116 (11th Cir. 2019) ("The term discretionary authority covers all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." (internal

quotation marks and citation omitted)). Courts in the Eleventh Circuit "look to the general nature of the [official's] action, temporarily putting aside the fact that it may have been committed . . . in an unconstitutional manner." *Holloman*, 370 F.3d at 1266. The Court must characterize Defendant Deputy Jones' actions "at the minimum level of generality necessary to remove the constitutional taint." *Id.* at 1266. "The inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act. Framed that way, the inquiry is no more than an untenable tautology." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998) (internal quotation marks and citations omitted). Put in other words, the Court must "strip out the allegedly illegal conduct" and "ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Spencer v. Benison*, 5 F.4th 1222, 1231 (11th Cir. 2021); *Harbert Int'l, Inc.*, 157 F.3d at 1282. In *Watkins v. Azael*, the defendant, a correctional officer, was accused of repeatedly threatening to rape an inmate during cell checks at a correctional facility "while showing [plaintiff] gestures of how [defendant] intend[ed] to rape him." No. 22-11648, 2023 WL 4422527, at *1 (11th Cir. July 10, 2023) (per curiam) (third alteration in original). The Eleventh Circuit held that defendant was acting within his discretionary authority because, although defendant was not authorized to threaten or sexually harass plaintiff, "when [Defendant] allegedly made the rape threats, he was on duty as a correctional officer . . . and was conducting a cell check, a legitimate job-related function." *Id.* at *5–6. Furthermore, in *Doe v. City of Miami Gardens*, the court found that defendant, a police sergeant, was acting within the scope of his discretionary authority when he allegedly sexually assaulted plaintiff in a hotel room because asking "whether [defendant] was performing a discretionary function, or committing a sexual assault . . . focuses on the wrong conduct." 389 F. Supp. 3d 1118, 1129 (S.D. Fla. 2019) (citation omitted). There, the defendant's actions "of transporting a victim away from the middle of a roadway—the scene of a potential suicide attempt—and taking her to a safer place, [the hotel,] even if it is not the place she intended to go. . .reasonably related to the outer perimeter of his discretionary duties." *Id.* (citation omitted).

Likewise here, Defendant Deputy Jones was performing legitimate job-related duties while investigating Plaintiff's reported crime. The Court must examine Defendant Deputy Jones' actions at the minimum level of generality to remove the constitutional taint. To do so, the Court asks if Defendant Deputy Jones—when documenting an assault victim's injuries, taking a victim's statement, and examining the property where the alleged assault occurred—was "performing a legitimate job-related function . . . through means that were in his power to utilize." *See Holloman*, 370 F.3d at 1256–66. While Defendant Deputy Jones' alleged actions may have been inappropriate—and possibly unconstitutional— Defendant Deputy Jones' actions of documenting Plaintiff's injuries, taking her statement, and appraising her home for property damage, "strip[ing] out the allegedly illegal conduct[,]" would have been within the "outer perimeter of an official's discretionary duties." *Spencer*, 5 F.4th at 1231; *Harbert Int'l, Inc.*, 157 F.3d at 1282.

### B. Constitutional Violation

Since Defendant Deputy Jones has demonstrated that he was acting within his discretionary authority, the burden shifts to Plaintiff to show a constitutional violation. Plaintiff alleges that Defendant Deputy Jones violated her Fourth Amendment rights against unlawful search and seizure and her Fourteenth Amendment rights to Equal Protection and Substantive Due Process. As discussed below, although Plaintiff has alleged facts supporting constitutional violations of the Fourth Amendment and Substantive Due Process, her claims for sexual assault and sexual harassment are properly analyzed under the Equal Protection Clause. Plaintiff has alleged facts sufficient to show a violation of her rights under the Equal Protection clause, and demonstrated sufficiently that these rights were "clearly established." Thus, Plaintiff's Fourth Amendment claims and Substantive Due process claim must be dismissed. Defendant is not entitled to qualified immunity on Plaintiff's Equal Protection claim.

#### 1. Fourth Amendment Claims

The Fourth Amendment, binding on the states by the Fourteenth Amendment, provides the right to be free from unreasonable searches and seizures by the government. U.S. Const. amend. IV. To make out a claim under the Fourth Amendment, Plaintiff first

needs to demonstrate that she was searched or seized by a police official. A search occurs when there is an "official intrusion into [a] private sphere" that "an individual 'seeks to preserve . . . as private,' and [their] expectation of privacy is 'one that society is prepared to recognize as reasonable[.]'" *Carpenter v. United States*, 585 U.S. 296, 304 (2018) (quoting *Smith v. Maryland*, 442 U.S. 735, 740 (1979)). "A trespass on 'houses' or 'effects,' or a[n] . . . invasion of privacy, is not alone a search unless it is done to obtain information[.]" *United States v. Jones*, 565 U.S. 400, 408 n.5 (2012).

Plaintiff alleges that Defendant Deputy Jones violated her Fourth Amendment rights in two ways. First, Plaintiff alleges that Defendant Deputy Jones violated her Fourth Amendment rights when he took her phone and added himself in an application. (Doc. 25 ¶¶ 26–27). While Plaintiff may have a legitimate expectation of privacy in her cell phone, Plaintiff has not alleged any facts that indicate that Defendant Deputy Jones searched her phone for the purpose of obtaining information. Plaintiff only alleges that Defendant Deputy Jones "grabbed [her] cell phone out of [her] hand and 'added' himself to an application on [her] phone." (*Id.* ¶ 26). While inappropriate, this does not constitute a Fourth Amendment violation.

Next, Plaintiff argues that Defendant Deputy Jones violated her Fourth Amendment rights when he detained her, searched her, touched her without her consent, and photographed her. (*Id.* ¶ 35). "[A] seizure occurs when an officer, 'by means of physical force or show of authority, has in some way restrained the liberty of a citizen[.]'" *Robert v. Spielman*, 643 F.3d 899, 905 (11th Cir. 2011) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)). "An encounter between a police officer and a citizen becomes a seizure when 'a reasonable person would not feel free to terminate the encounter." *Id.* (quoting *United States v. Jordan*, 635 F.3d 1181, 1186 (11th Cir. 2011)). While the Eleventh Circuit has not directly addressed whether a sexual assault on its own qualifies as a seizure under the Fourth Amendment, the Seventh Circuit has held that "[n]ot all touches by officers rise to the level of seizures under the Fourth Amendment . . . but sexual assaults do." *Hess v. Garcia*, 72 F.4th 753, 763 (7th Cir. 2023). "Sexual assault intrudes into bodily security and is quite literally a 'seizure,' restricting freedom of movement even if briefly." *Id.*; *see also*

*Johnson v. Cannon*, 947 F. Supp. 1567, 1572 (M.D. Fla. 1996) (concluding that plaintiff, who alleged that she was sexually assaulted by a deputy sheriff, was seized under the Fourth Amendment); *Christina N. v. City of San Bernardino*, No. EDCV 24-1593-KK-AGRX, 2024 WL 5411376, at *4–5 (C.D. Cal. Oct. 18, 2024) (same). Furthermore, such seizure is unreasonable because "[n]o governmental interest is served by a state actor sexually assaulting anyone." *Hess*, 72 F.4th at 764.

Plaintiff has alleged facts sufficient to establish that a Fourth Amendment seizure has occurred because she claims that Defendant Deputy Jones "made unwanted touching of [her] body . . . [including] trying to touch the area around her breasts and groin[.]" (Doc. 25 ¶ 18). Furthermore, it is clear that Plaintiff was not free to leave as she had to create the ruse of picking her children up and repeat it several times before Defendant Deputy Jones allowed her to leave. (*Id.* ¶ 19). Accordingly, Plaintiff has pled facts sufficient to show that a seizure occurred. Because, however, allegations that that an officer sexually assaulted or harassed an individual "outside of the context of an arrest" are properly analyzed under the Fourteenth Amendment, the Court does not reach the question of whether a Fourth Amendment violation occurred. *See Walker v. Heard*, No. 7:15-cv-00924-RDP, 2016 WL 6699417, at *9 (N.D. Ala. Nov. 15, 2016); *see also Alexander v. DeAngelo*, 329 F.3d 912, 916 (7th Cir. 2003); *Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 796 (8th Cir. 1998).

### 2. Substantive Due Process Claims

Plaintiff alleges she was "deprived of her Fourth and Fourteenth Amendment rights to substantive due process, her right to bodily integrity, her right to privacy, and other federally protected rights, when she was unlawfully seized, detained, arrested, searched, sexually assaulted, sexually battered, and harassed by [Defendant Deputy Jones]." (Doc. 25 at ¶ 36). Defendant Deputy Jones argues that Plaintiff cannot "meet the burden of showing that the alleged conduct of Defendant [Deputy] Jones in photographing and touching her violated a constitutional right of hers." (Doc. 27 at 8). Citing this Court's decision in *Thompson v. Albany Area Community Service Board*, Plaintiff argues that "sexual misconduct [is] contrary to clearly established constitutional rights[.]" 620 F. Supp. 3d 1347 (M.D. Ga. 2022); (Doc. 30 at 7).

To bring a substantive due process claim, a plaintiff must allege that she has been deprived of a fundamental right, "that is, [a] right[] that [is] implicit in the concept of ordered liberty." *Worthy v. City of Phenix City*, 930 F.3d 1206, 1221 (11th Cir. 2019) (internal quotation marks and citation omitted). Sexual assault by a state official is a violation of the fundamental right to bodily integrity. *See Alexander*, 329 F.3d at 916 ; *Rogers*, 152 F.3d at 796; *Hess*, 72 F.4th at 764–67; *see also Doe*, 389 F. Supp at 1133 n.5 (noting that sexual assault by a deputy "arguably may have constituted a substantive due process violation"). As discussed above, such violations of the right to bodily integrity are properly analyzed under the Fourteenth Amendment when they "occurred outside the context of an arrest." *See Walker*, 2016 WL 6699417, at *9; *see also Alexander*, 329 F.3d at 916; *Rogers*, 152 F.3d at 796. But if "a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Echols v. Lawton*, 913 F.3d 1313, 1326 (11th Cir. 2019) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998)) (other citation omitted). Because the Equal Protection Clause of the Fourteenth Amendment provides an explicit textual source of constitutional protection against sexual harassment and sexual assault, the Court will analyze Plaintiff's claim under the Equal Protection Clause, "not under the rubric of substantive due process." *See Echols*, 913 F.3d at 1326 (quoting *County of Sacramento*, 523 U.S. at 843); *see also Jordan v. Mosley*, 298 F. App'x 803, 805 (11th Cir. 2008) (per curiam). While the Eleventh Circuit has not explicitly stated that sexual harassment claims should be analyzed under the Equal Protection clause rather than under the Substantive Due Process clause, it has affirmed a case holding as such. *See Doe v. Fulton-DeKalb Hosp. Auth.*, No. 1:05-CV-2277-TWT, 2006 WL 1222289, at * 2 (N.D. Ga. May 4, 2006) (dismissing plaintiffs' substantive due process claim for sexual harassment because "the Equal Protection clause is the appropriate avenue of relief"), *aff'd*, 628 F.3d 1325 (11th Cir. 2010). Accordingly, because the alleged acts are contemplated under the Equal Protection Clause of the Fourteenth Amendment, the Court does not find that a Substantive Due Process violation has occurred.

### 3. Equal Protection Claims

Plaintiff alleges that Defendant Deputy Jones violated her rights "under the Equal Protection Clause of the Fourteenth Amendment as she was subjected to violations of her constitutional right to bodily integrity and privacy, sexual harassment, sexual battery, and sexual assault while unlawfully detained and same was done on account of her gender or sex." (Doc. 25 ¶ 36). The Equal Protection Clause of the Fourteenth Amendment provides that "no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *Martinez v. Warden*, 848 F. App'x 864, 867 (11th Cir. 2021) (per curiam) (internal quotation marks omitted) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). The Equal Protection Clause has been interpreted to protect against sex-based discrimination, including sexual harassment, in the employment context and in context of public education. *See e.g. Cross v. State of Ala., State Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1508 (11th Cir. 1995) ("Appellees have a constitutional right to be free from unlawful sex discrimination and sexual harassment in public employment." (citation omitted)); *Lyes v. City of Riviera Beach*, 166 F.3d 1332, 1340 (11th Cir. 1999) ("The Equal Protection Clause of the Fourteenth Amendment protects women from sex discrimination by persons acting under color of state law." (citation omitted)); *Hill v. Cundiff*, 797 F.3d 948, 978–80 (11th Cir. 2015) (finding that a school principal violates a student's rights under the Equal Protection Clause when he does not address known sexual harassment). While the Eleventh Circuit has not directly addressed whether this right expands beyond the employment context or the public education context, other circuits have found a right to be free from sexual harassment by a state actor outside of these contexts. In *Shepherd v. Robbins*, the Tenth Circuit found that Plaintiff had an Equal Protection claim against Defendant, a patrolman, after he sexually harassed her during a traffic stop. 55 F.4th 810 (10th Cir. 2022). The court found that, "under [its] jurisprudence[,] . . . a state actor violates the Equal Protection Clause of the Fourteenth Amendment when he commits sexual harassment." *Id.* at 817 (citation omitted). "In this context, sexual harassment occurs when a state actor abuses his governmental authority to

further his own sexual gratification." *Id.* (citation omitted). Furthermore, the Equal Protection clause also has been interpreted to protect individuals from sexual assault by a government official. *Hess*, 72 F.4th at 758 (first citing *Jennings v. Univ. of North Carolina*, 444 F.3d 255, 273–74, 279 (4th Cir. 2006); and then citing *Johnson v. Martin*, 195 F.3d 1208, 1211 (10th Cir. 1999)). Construing the facts in the light most favorable to Plaintiff, she has established a violation of her Fourteenth Amendment right to Equal Protection.

### C. Clearly Established

As the allegations in the Amended Complaint, accepted as true, demonstrate that Defendant Deputy Jones violated Plaintiff's constitutional rights when he abused his governmental authority to sexually harass and sexually assault her, Plaintiff now must demonstrate that sexual harassment of this kind is a "clearly established" violation of the constitution, as required to overcome qualified immunity. "[A] right can be clearly established in one of three ways. [A plaintiff] must point to either (1) 'case law with indistinguishable facts,' (2) 'a broad statement of principle within the Constitution, statute, or case law,' or (3) 'conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.'" *Crocker v. Beatty*, 995 F.3d 1232, 1240 (11th Cir. 2021) (quoting *Lewis*, 561 F.3d at 1291-92). With regard to the second and third ways, "the Supreme Court has warned us not to 'define clearly established law at a high level of generality.'" *Id.* (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014)). Rather, "we must ask whether every reasonable police officer in [Defendant Deputy Jones'] position would have known that" inappropriately touching, photographing, sexually harassing, and sexually assaulting Plaintiff violated her Constitutional rights. *Crocker*, 995 F.3d at 1242. As the Eleventh Circuit stated in *Gates v. Khokhar*, "the test asks whether already existing law was so clear that, given the specific facts facing this particular officer, one must conclude that every reasonable official would have understood that what he is doing violates the Constitutional right at issue." 884 F.3d 1290, 1303 (11th Cir. 2018) (internal quotation marks and citation omitted). Here, a reasonable officer would have known that inappropriately touching, photographing, sexually harassing, and sexually assaulting Plaintiff violated her Constitutional right to be free from discrimination on the basis of her

sex. Accordingly, Defendant Deputy Jones is not entitled to qualified immunity as to Plaintiff's Fourteenth Amendment claims.

### III.    42 U.S.C §1983 Claims against Defendant Colquitt County and Defendant Sheriff Howell in his Individual Capacity

In Count III, Plaintiff asserts a § 1983 claim against Defendants Colquitt County and Sheriff Howell[2] alleging that Defendants "inadequately vetted deputies . . . , inadequately supervised them, improperly retained such deputies . . . , [and] inadequately trained deputies . . . "; "knew or should have known that [Defendant Deputy Jones] had a history of sexual harassment and they consciously disregarded the risk he posed . . . "; "had a persistent and widespread practice of authorizing certain deputies . . . to work in law enforcement despite . . . previously [being] engaged in sexual harassment in the scope of their employment[]"; and "have a persistent and widespread practice of allowing deputies to violate . . . policies and procedures[.]" (Doc. 25 ¶¶ 40–42). Plaintiff also alleges "there was a culture within the [Sheriff's Office] wherein violating citizen's civil rights was not only tolerated but also encouraged; thereby allowing the deprivation of Plaintiff's civil rights[.]" (*Id.* ¶ 42). Plaintiff alleges their actions amounted to "deliberate indifference" which "proximately caused the damages suffered by the Plaintiff in this action." (*Id.* ¶ 40). Defendants Colquitt County and Sheriff Howell argue that Colquitt County cannot be held liable for the alleged actions of Sheriff Howell, and Sheriff Howell is entitled to qualified immunity for claims asserted against him in his individual capacity. (Doc. 28-1 at 3–8, 11–20).

### A.  Colquitt County's Liability under §1983

Defendant Colquitt County argues that it cannot be held liable under § 1983 because "counties[] can be sued under § 1983 only where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or

---

[2]    Plaintiff also refers to "the Colquitt County Sheriff's Office" in her Amended Complaint. (*See* Doc. 25). The Sheriff's Office has not been served and is not a party to this suit. Plaintiff clarified that "[t]o the extent the amended complaint can be read to include a claim against 'Colquitt County Sheriff's Office', as opposed to Colquitt County or its Sheriff, Plaintiff concedes that such an entity is not subject to suit and any such claim is withdrawn." (Doc. 29 at 19–20).

decision officially adopted and promulgated by that body's officers." (Doc. 28-1 at 5–6 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). Plaintiff argues that she sufficiently has alleged facts demonstrating that Defendant Colquitt County has a policy "that allows for the Sheriff to hire deputies with a history of sexual misconduct" because "there is evidence of that policy by virtue of the fact that it occurred in this instance." (Doc. 29 at 17).

"Local governing bodies . . . can be sued directly under § 1983 . . . where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690. "A county is 'liable under section 1983 only for acts which [the county] is actually responsible.'" *Grech*, 335 F.3d at 1329 (citing *Marsh v. Butler County*, 268 F.3d 1014, 1027 (11th Cir. 2001) (en banc)). "Thus, [Plaintiff] must 'identify a municipal "policy" or "custom" that caused [her] injury.'" *Id.* (citation omitted). "A plaintiff . . . has two methods by which to establish a county's policy: identify either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the *repeated* acts of a final policymaker for the county. *Id.* (emphasis added) (citing *Monell,* 436 U.S. at 690–91). "Under either avenue, a plaintiff (1) must show that the local governmental entity, here the county, has authority and responsibility over the governmental function in issue and (2) must identify those officials who speak with final policymaking authority for that local governmental entity concerning the act alleged to have caused the particular constitutional violation in issue." *Id.* (citations omitted).

Here, Plaintiff has failed to identify an official county policy. Plaintiff only alleges generally that "[i]t was the policy and practice of [Defendants Colquitt County and Sheriff Howell] to employ certain deputies" and "[Defendants Colquitt County and Sheriff Howell] have maintained a system of review of deputy conduct which is so untimely and cursory to be ineffective[,]" but she has not pled *any* facts supporting this assertion. (Doc. 25 ¶¶ 29, 40). Plaintiff also has not alleged facts showing any "repeated acts" sufficient to support a claim of an unofficial custom. Plaintiff states that Defendants "had a persistent and widespread practice of authorizing certain deputies . . . to work in law enforcement

despite . . . previously [being] engaged in sexual harassment in the scope of their employment[,]" but Plaintiff does not name any other deputies that have a history of sexual harassment ignored by Defendants Colquitt County and Sheriff Howell or cite to any specific instances. (*Id.*¶ 41). Additionally, Defendant Colquitt County does not have "authority and responsibility" over hiring, firing, and training of deputies. *See Grech*, 335 F.3d at 1329. As discussed above, a sheriff is considered an arm of the state when hiring, firing, and training its deputies. As such, Defendant Sherriff Howell cannot be said to a policymaker for the county. Accordingly, Defendant Colquitt County cannot be held liable under §1983.

### B. Qualified Immunity for Sheriff Howell

Defendant Sheriff Howell argues that he is entitled to qualified immunity from the claims against him in his individual capacity because "(1) he was acting within his discretionary authority; (2) he did not violate the Plaintiff's Constitutional rights; and (3) he did not violate clearly established law." (Doc. 28-1 at 11). Plaintiff argues that Defendant Sheriff Howell is not entitled to qualified immunity because "he knew, or should have known, of [Defendant] Deputy Jones' Prior sexual misconduct[.]" (Doc. 29 at 10–11). A government employee acts in his discretionary authority when "(a) performing a legitimate job-related function . . . (b) through means that were within his power to utilize." *Holloman*, 370 F.3d at 1265. Hiring, firing, supervising, and training deputies qualify as legitimate job-related functions. Thus, to overcome qualified immunity, Plaintiff must demonstrate that Defendant Sheriff Howell violated a constitutional right, and that right was clearly established. *See Sebastian*, 918 F.3d at 1307. Plaintiff has failed to demonstrate that Defendant Sherriff Howell violated her constitutional rights.

"Supervisory officials . . . are not liable for the unconstitutional acts of their subordinates 'on the basis of respondeat superior or vicarious liability.'" *Clark v. Sheffield*, 807 F. App'x 910, 916 (11th Cir. 2020) (per curiam) (citing *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999)). "To be liable under a supervisory theory, the supervisor must personally participate in the alleged constitutional violation or there must be a causal connection between the supervisory official's actions and the alleged deprivation." *Id.* To

establish the requisite causal connection, Plaintiff must allege (1) "a history of widespread abuse [that put Defendant Sheriff Howell] on notice of the need to correct the alleged deprivation, and [that he failed] to do so[;]" (2) that Defendant Sheriff Howell's "custom or policy result[ed] in [the violation of Plaintiff's] constitutional rights[;]" or (3) that "facts support an inference that [Defendant Sheriff Howell] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.* at 917–18. Plaintiff does not allege that Defendant Sheriff Howell personally participated in the unlawful acts of Defendant Deputy Jones, but rather "negligently hired, retained, supervised and trained Defendant [Deputy] Jones[.]" (Doc. 25 ¶ 10). Thus, to overcome qualified immunity, Plaintiff must show a causal connection between Defendant Sheriff Howell's actions and the alleged constitutional violation.

Plaintiff has not alleged any facts establishing a history of widespread abuse or that Defendant Sherriff Howell directed Defendant Deputy Jones to commit the alleged violations or knew that Defendant Deputy Jones would commit them and failed to stop him. Thus, Plaintiff must allege that the Colquitt County Sheriff's Office custom or policy resulted in the alleged violations. Plaintiff has only made a conclusory allegation that Defendants Colquitt County and Sheriff Howell "have a persistent and widespread practice of allowing deputies to violate . . . policies[,] procedures[,]" and the constitutional rights of others, but has not provided any other examples of violations within the Colquitt County Sheriff's Office. (Doc. 25 ¶¶ 40–42). Such conclusory allegations are not sufficient. *See Iqbal*, 556 U.S. at 678–79. Plaintiff also has not alleged specific facts establishing a custom or policy that resulted in the violation of her rights; nor has Plaintiff alleged any facts regarding Defendant Sheriff Howell's knowledge, involvement, or direction to Defendant Deputy Jones with respect to the acts that form the basis of Plaintiff's claims. Accordingly, Defendant Sheriff Howell is entitled to qualified immunity as to Plaintiff's claims against him in his individual capacity.

## IV.    Counts V–XII: State Law Claims

Plaintiff brings several claims under Georgia law, including negligence against all defendants (Count V), intentional infliction of emotional distress against all defendants

(Count VII), assault and battery against Defendant Deputy Jones (Count VIII), invasion of privacy against Defendant Deputy Jones (Count IX), false imprisonment against Defendant Deputy Jones (Count X), sexual harassment against Defendant Deputy Jones (Count XI), and trespass against Defendant Deputy Jones (Count XII). (Doc. 25 ¶¶ 56–66).

### A. Sovereign Immunity Under Georgia Law

Defendants Deputy Jones, Colquitt County, and Sheriff Howell claim they are immune from suit in their official capacities under the Georgia Constitution. "In Georgia, sovereign immunity extends to the state and all of its departments and agencies. This includes sheriffs[, their deputies] and counties." *Carter v. Butts County*, 821 F.3d 1310, 1323 (11th Cir. 2016) (internal quotation marks omitted) (first citing Ga. Const. art. I, § 2, para. IX; and then citing *Gilbert*, 452 S.E.2d at 479); *see also McCobb v. Clayton County*, 710 S.E.2d 207, 209 (Ga. Ct. App. 2011) ("As provided in Georgia's constitution, sovereign immunity extends to the counties[.]"); *see also Nichols v. Prather*, 650 S.E.2d 380, 384–85 (Ga. Ct. App. 2007) (noting that sheriffs and their deputies are county officials for the purposes of sovereign immunity under Georgia law). It protects these government entities against all unconsented-to legal actions. *Everson v. DeKalb Cnty. Sch. Dist.*, 811 S.E.2d 9, 11 (Ga. Ct. App. 2018). "Consent to suit can only be given by the [Georgia] Constitution . . . or by an act of the General Assembly." *Lathrop v. Deal*, 801 S.E.2d 867, 880 (Ga. 2017) (citation omitted). Georgia has waived its sovereign immunity only in very limited circumstances—primarily, in suits under the Georgia Tort Claims Act, against municipalities that have purchased general liability insurance, and for breach of a written contract. *See id.* at 877; *see also Carter*, 821 F.3d at 1323. "Sovereign immunity is not an affirmative defense that the governmental defendants must establish . . . . [I]t is a privilege[.]" *Scott v. City of Valdosta*, 634 S.E.2d 472, 476 (Ga. Ct. App. 2006). Accordingly, "the party seeking to benefit from the waiver" has the burden to show such a waiver exists. *Id.*

Plaintiff argues that Georgia has waived sovereign immunity in this instance by O.C.G.A. § 33-24-51(b) because the alleged verbal sexual harassment took place in Defendant Deputy Jones' patrol car and the County purchased liability insurance for its

vehicles. (Doc. 25 ¶ 31; Doc. 30 at 11). Plaintiff also argues that "[i]mmunity is waived pursuant to O.C.G.A. §§ 15-16-5, 15-16-23, and 15-16-24." (Doc. 30 at 11). Defendant Deputy Jones argues that O.C.G.A § 33-24-51(b) "only applies to alleged injuries that . . . originate from the *use* of a motor vehicle *as a vehicle*" and O.C.G.A. §§ 15-16-5, 15-16-23, and 15-16-24 only waive immunity for official actions of a sheriff when sued on a sheriff's bond. (Doc. 27-1 at 11; Doc. 31 at 8).

O.C.G.A. § 33-24-51(b) provides that "sovereign immunity of local government entities for a loss arising out of claims for the negligent use of a covered motor vehicle is waived. . . ." In *McBrayer v. Scarbrough*, the Supreme Court of Georgia addressed the meaning of the word "use" in the statute. 893 S.E.2d 660 (Ga. 2023). The court determined that "loading a person into or restraining a person in a patrol car constitutes a 'use' of a patrol car as to which sovereign immunity is waived under [O.C.G.A] []§ 33-24-51 (b)[.]" *Id.* at 396–97. The court overruled previous interpretations that required the vehicle to be "actively in use" "as a vehicle." *Id.* at 396. While Defendant Deputy Jones arguably did use his patrol car as a location to speak with Plaintiff and allegedly used that occasion to sexually harass Plaintiff, such use is not negligent as required under O.C.G.A. § 33-24-51(b) to waive sovereign immunity. In *Hooks v. Rockdale County*, the Georgia Court of Appeals found that sovereign immunity was not waived under O.C.G.A. § 33-24-51(b) where plaintiffs' claims of false imprisonment, false arrest, assault, and battery arising from being detained in the back of a patrol car were "all intentional torts, not acts of negligence." 907 S.E.2d 342, 345 (Ga. Ct. App. 2024) (citations omitted); *see also Upshaw v. Columbus Consol. Gov't*, 894 S.E.2d 75 (Ga. Ct. App. 2023) (finding no waiver of sovereign immunity under when a police officer deliberately struck a plaintiff with his patrol car). While Plaintiff labels Count V as negligence, she claims that Defendant Deputy Jones "intentionally and negligently harass[ed] and detain[ed] Plaintiff, thereby commit[ing] the torts of false imprisonment, sexual assault, sexual battery, assault[,] and battery[,]" all of which are intentional torts. (Doc. 25 ¶ 52). Furthermore, O.C.G.A. §§ 15-16-5, 15-16-23, and 15-16-24, which Plaintiff also claims waives sovereign immunity in this case, are not applicable as they only apply to actions brought on the sheriff's or deputy's bond.

Accordingly, Plaintiff has not carried her burden of showing a waiver of sovereign immunity. Defendants Deputy Jones, Colquitt County, and Sheriff Howell are all immune from suit in their official capacities.

### B. Official Immunity Under Georgia Law

Defendants Deputy Jones and Sherriff Howell also claim they are immune from suit in their individual capacities under the doctrine of official immunity. Under Georgia law, the doctrine of official immunity shields public officers sued in their individual capacities "for discretionary actions taken within the scope of their official authority, and done without willfulness, malice, or corruption." *Everson*, 811 S.E.2d at 12. Accordingly, "state officers and employees 'are subject to suit only when they negligently perform or fail to perform their ministerial functions or when they act with actual malice or intent to cause injury in the performance of their official functions.'" *Peterson v. Baker*, 504 F.3d 1331, 1339 (11th Cir. 2007) (quoting *Gilbert*, 452 S.E.2d at 483); *see also* Ga. Const. art. I, § 2, para. IX(d). At the motion to dismiss stage, "the plaintiff must show that the officer had 'actual malice or an intent to injure'" to overcome official immunity. *Smith v. LePage*, 834 F.3d 1285, 1297 (11th Cir. 2016) (quoting *Cameron v. Lang*, 549 S.E.2d 341, 345 (Ga. 2001)); *see also O'Kelley v. Craig*, 781 F. App'x 888, 899 (11th Cir. 2019); *cf. Reed v. DeKalb County*, 589 S.E.2d 584, 588 (Ga. Ct. App. 2003) (observing that a plaintiff bears the burden of overcoming official immunity).

"Whether an official's act is ministerial or discretionary is determined based on the facts of each case." *Speight v. Griggs*, 579 F. App'x 757, 759 (11th Cir. 2014) (citing *Grammens v. Dollar*, 697 S.E.2d 775, 777 (Ga. 2010)). "A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty." *Glass v. Gates*, 716 S.E.2d 611, 621 (Ga. Ct. App. 2011) (citation omitted), *aff'd*, 729 S.E.2d 361 (Ga. 2012). "A discretionary act . . . calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." *Stone v. Taylor*, 506 S.E.2d 161, 163 (Ga. Ct. App. 1998) (citation omitted). Georgia courts have held that a law enforcement officer acts "within [their]

discretionary authority [when] investigating [a] case[.]" *Marshall v. Browning*, 712 S.E.2d 71, 74 (Ga. Ct. App. 2011). Furthermore, "[t]he operation of a police department, including the degree of training and supervision to be provided its officers, is a discretionary governmental function[.]" *McDay v. City of Atlanta*, 420 S.E.2d 75, 76 (Ga. Ct. App. 1992) (citations omitted). Here, Defendant Deputy Jones was performing a discretionary act while investigating a reported crime. Likewise, Defendant Sheriff Howell was performing a discretionary act when he hired, trained, and supervised Defendant Deputy Jones. Accordingly, to overcome official immunity, Plaintiff must demonstrate that Defendants Deputy Jones and Sherrif Howell acted with malice or intent to injure.

"In the context of official immunity, 'actual malice requires a deliberate intention to do wrong and denotes express malice or malice in fact.'" *Peterson*, 504 F.3d at 1339 (quoting *Adams v. Hazelwood*, 520 S.E.2d 896, 898 (Ga. 1999)). Actual malice "does not include 'implied malice'"—that is, "the reckless disregard for the rights or safety of others." *Murphy v. Bajjani*, 647 S.E.2d 54, 60 (Ga. 2007) (quoting *Merrow v. Hawkins*, 467 S.E.2d 336, 338 (Ga. 1996)). As for actual intent to cause injury, that standard requires "an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury." *Kidd v. Coates*, 518 S.E.2d 124, 125 (Ga. 1999) (citation and internal quotation marks omitted).

### 1. Defendant Deputy Jones

Plaintiff argues Defendant Deputy Jones committed "numerous instances of sexual harassment, assault, and battery. . . , all done maliciously with the intent to harm." (Doc. 30 at 12). Defendant Deputy Jones argues that "Plaintiff cannot meet her burden to prove malice or intent to injure[.]" (Doc. 31 at 9). In order to demonstrate malice, Plaintiff must plead facts showing that Defendant Deputy Jones acted with "the intent to do something wrongful or illegal." *Peterson*, 504 F.3d at 1339 (quoting *Adams*, 520 S.E.2d at 898). Here, Plaintiff's allegations that Defendant Deputy Jones ordered Plaintiff to disrobe despite her reluctance, inappropriately took pictures of her while she did not have clothes on, "made unwanted touching of [her] body . . . including . . . around her thighs and lower buttock area[,]" and made persistent unwanted sexual advances on her certainly demonstrate

Defendant Deputy Jones' "intent to do something wrongful." (Doc. 25 ¶ 18); *see Peterson*, 504 F.3d at 1339 (citation omitted). Plaintiff sufficiently alleged actual malice and Defendant Deputy Jones is not immune from suit under Georgia law.

### 2. Defendant Sheriff Howell

Plaintiff alleges that "[Defendant] Sheriff [Howell] knew, or should have known, [Defendant] Deputy Jones had prior sexual harassment complaints[]" and Defendant "Sheriff [Howell] does not have the discretion to allow deputies to sexually assault others, thus the failure to control and reprimand deputies was ministerial." (Doc. 29 at 16). As discussed above, Defendant Sheriff Howell was performing a discretionary act when training and supervising deputies because "[e]mployment decisions, including the retention, hiring and supervision of employees, 'necessarily require consideration of numerous factors and the exercise of deliberation and judgment . . . [and] are therefore precisely the types of administrative action the discretionary function exception seeks to shield from judicial second-guessing.'" *See Boyd v. Nichols*, 616 F. Supp. 2d 1331, 1348 (M.D. Ga. 2009) (first alteration in original) (citation omitted). Plaintiff has not demonstrated that Defendant Sherrif Howell was acting with actual intent to cause harm to Plaintiff in that she has not alleged any facts demonstrating Defendant Sheriff Howell's knowledge, involvement, or direction to Defendant Deputy Jones with respect to the alleged sexual harassment. Accordingly, Defendant Sheriff Howell is entitled to official immunity under Georgia law.

### C. Shotgun Pleading

Defendant Deputy Jones also argues that Plaintiff's state law claims are "'shotgun pleadings' and should be dismissed" because the "allegations in the present case are too vague to do anything more than raise an ambiguous suspicion of possible tortious behavior." (Doc. 27 at 13–16). A complaint is a shotgun pleading if it: (1) contains "multiple counts where each count adopts the allegations of all preceding counts"; (2) is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) fails to "separate 'each cause of action or claim for relief' into a different count"; or (4) "assert[s] multiple claims against multiple defendants without

specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Barmapov v. Amuial*, 986 F.3d 1321, 1324–25 (11th Cir. 2021) (alteration in original) (quoting *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–23 (11th Cir. 2015). The "unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323 (first citing *Sledge v. Goodyear Dunlop Tires N. Am., Ltd.*, 275 F.3d 1014, 1018 n.8 (11th Cir. 2001) (per curiam); and then citing *Boatman v. Town of Oakland*, 76 F.3d 341, 343 n.6 (11th Cir. 1996)).

Plaintiff's Amended Complaint is not a shotgun pleading. While each of Plaintiff's state law claims begin with "Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully restated herein[,]" District Courts are only directed to order the Plaintiff to file an amended complaint if "'it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief." (Doc. 25 ¶¶ 51, 54, 56, 59, 61, 63, 65); *Weiland*, 792 F.3d at 1325. Here, it is not at all impossible to know which facts support Plaintiff's claims as Plaintiff clearly outlined the facts which form the basis of her claims in the statement of facts. (Doc. 25 ¶¶ 12–31). Accordingly, a dismissal on the grounds of shotgun pleading is not warranted.

## CONCLUSION

Plaintiff may proceed with her §1983 Fourteenth Amendment Equal Protection claim against Defendant Deputy Jones in his individual capacity. Plaintiff also may proceed with her state law claims against Defendant Deputy Jones in his individual capacity. Plaintiff's § 1983 Fourth Amendment and Fourteenth Amendment Substantive Due Process claims against Defendant Deputy Jones in his individual capacity are **DISMISSED with prejudice.** Plaintiff's § 1983 claims against Defendant Deputy Jones in his official capacity are barred by the Eleventh Amendment and are **DISMISSED with prejudice.** Plaintiff's §1983 claims against Defendant Sheriff Howell in his official and individual capacities are barred by the Eleventh Amendment and qualified immunity, respectively, and are **DISMISSED with prejudice.** Plaintiff's §1983 claims against Defendant Colquitt

County are **DISMISSED with prejudice.** Plaintiff's state law claims against Defendants Deputy Jones, Colquitt County, and Sheriff Howell in their official capacities are barred by sovereign immunity and are **DISMISSED with prejudice.** Plaintiff's state law claims against Defendant Sheriff Howell in his individual capacity are barred by official immunity and are **DISMISSED with prejudice.**

Accordingly, Defendant Deputy Jones' Motion to Dismiss (Doc. 27) is **GRANTED in part** and **DENIED in part.** Defendants Colquitt County and Sheriff Howell's Motion to Dismiss (Doc. 28) is **GRANTED.**

**SO ORDERED**, this 24th day of March, 2025.

/s/ Leslie A. Gardner
**LESLIE A. GARDNER, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**